UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Case No. 23-cr-0222(1) (JRT/DLM) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Martin Ramirez, | |
| Defendant. | |

On June 21, 2023, Martin Ramirez was charged by indictment with a single count of Possession with the Intent to Distribute Methamphetamine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A). (Doc. 1.) This matter is before the Court on Mr. Ramirez's Motion to Supress Physical Evidence Obtained Pursuant to a Defective Warrant. (Doc. 28.) The case has been referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1.

The parties agreed to cancel the motion hearing scheduled for November 1, 2023, and requested that the Court decide the motion on the parties' written submissions. (Doc. 33.) The briefing on this matter concluded on October 31, 2023. For the reasons stated below, the Court recommends that Mr. Ramirez's Motion to Suppress Physical Evidence be denied.

## BACKGROUND

On March 31, 2023, Officer Clay Johnson applied for a search warrant to search "Martin Ramirez, Date of Birth XX/XX/1982, H/M, 5'09 235 lbs. (Ramada Inn by

Wyndham) #235, 6300 Wayzata Blvd, 55416 Golden Valley, MN, a second floor hotel room. The property is located on the south side of Wayzata Blvd north of I 394." (Doc. 34 at 2.) The application for the search warrant sought several items including: methamphetamine and all other controlled substances as defined by Minnesota Statutes Chapter 152; drug paraphernalia; documents and records; mail, credit cards, and house keys; currency; safes, lockboxes, and their keys; weapons and firearms; photographs, video tapes, audio recordings, and other store electrical communications; cellular phones; and computers and computer hard drives. (*Id*. at 1–2.)

The basis for issuing the search warrant included the following:

- On March 31, 2023, Officer Johnson spoke with a U.S. Drug Enforcement Agency ("D.E.A.") agent from the Sioux Falls, South Dakota field office. The agent told Officer Johnson that an individual named Martin Ramirez, DOB XX/XX/1982, was staying at the Ramada Inn at 6300 Wayzata Blvd., Golden Valley, MN 55416, and was possibly receiving packages of suspected methamphetamine through the U.S. mail at the same hotel.

- On March 31, 2023, Officer Johnson went to the Ramada Inn and spoke with the hotel management who told him that Mr. Ramirez was staying in room #235. While Officer Johnson was speaking with management, he observed a U.S. Postal Service worker deliver three large boxes to the front desk. Hotel management told Officer Johnson that the boxes were addressed to Mr. Ramirez. Approximately five minutes after the boxes were delivered, Officer Johnson observed a man matching the description of Mr. Ramirez arrive, collect the packages, and wheel them towards the interior of the hotel on a luggage cart.

- Officer Johnson researched Mr. Ramirez's criminal history and learned that he has the following criminal convictions: felony weapons violation-2005; felony possession of a controlled substance-2006; felony possession of a controlled substance-2006; and felony possession of a controlled substance-2014.

- D.E.A. Task Force Officer Justin McDonough responded with his K-9 partner "Odie," who "has been trained in the location and detection" of

2

- cocaine, crack cocaine, heroin, and methamphetamine and has been certified by the United States Police Canine Association ("U.S.P.C.A.") for narcotics detection. Odie was brought to the row of rooms which included #235. Odie showed a change in behavior consistent with detecting the scent of narcotics on room #235, but Officer McDonough attributed the change in behavior to environmental air flow in the hotel hallway rather than a positive alert.

- Because Odie's change in behavior was inconclusive, Task Force Officer Mark Altendorfer and his K-9 partner "Molly," who "has been certified by the [U.S.P.C.A.] for narcotics detection" and "has been trained in the location and detection of . . . marijuana, cocaine, crack cocaine, heroin, and methamphetamine," also performed a narcotics sniff search.

- Officer Altendorfer directed Molly to perform a sniff search on a row of rooms which included #235 and Molly positively alerted to the scent of narcotics on room #235.

(*Id*. at 3–5.) That same day, Hennepin County District Judge Daniel Moreno issued the search warrant for "Martin Ramirez, Date of Birth XX/XX/1982, H/M, 5'09 235lbs," and room #235 at the Ramana Inn on Wayzata Blvd. (*Id*. at 7.)

## ANALYSIS

Mr. Ramirez seeks a "four-corners" review of the search warrant to determine whether the warrant was supported by probable cause. He makes three arguments to support his position. First, he contends that the affidavit contains no facts to support probable cause to believe that the items sought would be in the hotel room. Second, Mr. Ramirez argues that there was an insufficient nexus between the evidence sought and commission of a crime. Finally, he argues that the scope of the areas to be searched was overbroad. He insists that evidence discovered because of the warrant should be suppressed. The government responds that warrant met the probable cause and particularity requirements of the Fourth Amendment's Warrant Clause, but even if it were defective in

some way, the Court should deny Mr. Ramirez's motion because officers relied on the search warrant in good faith.

I.  **The warrant was not unconstitutional.**

The Fourth Amendment requires that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found a in particular place." *United States v. Williams*, 477 F.3d 554, 557 (8th Cir. 2007) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). "[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Gates*, 462 U.S. at 232. Courts should read affidavits with "common sense and 'not in a . . . hyper technical fashion.'" *United States v. Caswell*, 436 F.3d 894, 897 (8th Cir. 2006) (quoting *Walden v. Carmack*, 156 F.3d 861, 870 (8th Cir. 1998)). Courts may only consider the information found within the four corners of the affidavit in determining whether probable cause for the warrant exists. *United States v. Hussein*, No. 20-cr-75 (ADM/BRT), 2020 WL 7685372, at *2 (D. Minn. Oct. 21, 2020), *R. and R. adopted*, 2020 WL 7310899 (D. Minn. Dec. 11, 2020). Reviewing courts accord "great deference to the issuing judge's determination that [the] affidavit established probable cause." *United States v. Keele*, 589 F.3d 940, 943 (8th Cir. 2009) (quoting *United States v. Smith*, 581 F.3d 692, 694 (8th Cir. 2009)).

> A. *The warrant affidavit established a fair probability that evidence of a crime and contraband would be found in Room 235.*

According to the affidavit, Officer Johnson received a tip from a D.E.A. officer that Mr. Ramirez might receive a package of suspected methamphetamine at the Golden Valley Ramada Inn. (Doc. 34 at 3 ¶ 3.) Based on this information, Officer Johnson went to the Golden Valley Ramada Inn and confirmed with hotel management that Mr. Ramirez was staying in Room 235. (*Id.* at 4 ¶ 4.) While Officer Johnson was speaking with the manager, he observed a U.S. Postal Service mail carrier deliver three large boxes—addressed to Mr. Ramirez—to the hotel. (*Id.*) Then, he saw a person matching Mr. Ramirez's description arrive, collect the packages, and take them into the hotel on a luggage cart. (*Id.*) Next, Officer Johnson reviewed Mr. Ramirez's criminal history and discovered that Mr. Ramirez had three prior controlled substance felonies and one prior weapons felony. (*Id.* at 4 ¶ 5.) Finally, two certified U.S.P.C.A. drug sniff dogs performed drug sniff searches in front of Room 235. (*Id.* at 4–5 ¶¶ 6–9.) While the first dog "demonstrated a change of behavior for the scent of narcotic odor on room #235," his handlers did not consider this a positive alert. (*Id.* at 5 ¶ 7.) But the second dog "demonstrated a positive alert for the scent of narcotic odor on room #235." (*Id.* at 5 ¶ 9.)

Mr. Ramirez insists that this information is conclusory and therefore insufficient to establish probable cause for the search warrant because there was no way for the reviewing court to determine the veracity of the D.E.A. agent's tip to Officer Johnson; the affidavit provided few descriptive details about the delivered packages; the affidavit provided no details about which features matched Mr. Ramirez; and the affidavit lacked detail about

5

the drug sniff dog's positive alert. Even so, issuing judges are "entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense[.]" *Caswell*, 436 F.3d at 899 (quoting *United States v. Angulo-Lopez*, 791 F.2d 1394, 1399 (9th Cir. 1986)); *United States v. Lamon*, 930 F.2d 1183, 1188 (7th Cir. 1991) (quoting *Angulo-Lopez*, 791 F.2d at 1399)). Based on the information provided to the issuing judge here, it was reasonable for him to infer that contraband or evidence of a crime would be found in Room 235. First, the information Officer Johnson provided in the affidavit was not based on the D.E.A. agent's tip alone. Rather, Officer Johnson went to the Ramada Inn and corroborated the tip when he confirmed with hotel management that Mr. Ramirez was staying there. Then, as the tip predicted, Officer Johnson observed a U.S.P.S. mail carrier deliver three packages addressed to Ramirez, and observed a man matching Mr. Ramirez's description collect the packages and take them with him into the hotel. (Doc. 34 at 3–4 ¶ 2–4.) Although Officer Johnson's affidavit did not explicitly list out details about the size, shape, or weight of the packages or which of the man's features matched Mr. Ramirez's description, the affidavit did say the packages were addressed to Mr. Ramirez and the man claimed them as his. Based on this corroboration, the issuing judge appropriately found the tip reliable enough to support probable cause. *United States v. Petruck*, 929 F.3d 952, 959 (8th Cir. 2019) ("[W]here [an informant's] tip was independently corroborated, a court may deem the . . . tip sufficiently reliable to support a probable cause determination.") (quoting *Caswell* 436 F.3d at 898). Moreover, the affidavit stated that Officer Johnson had two drug dogs perform drug sniffs on Room 235. (Doc. 34 at 4–5 ¶ 6–9.) Officer Johnson's affidavit stated that both dogs

6

were U.S.P.C.A. certified for narcotics detection and listed the narcotics that each dog was trained to detect. (*Id*.) While the first dog's sniff was inconclusive, the second dog provided a positive alert in front of Room 235. (*Id*.) The affidavit's description of a positive dog sniff and its representation that the dog was certified was sufficient to support probable cause for the search warrant. *Hussein*, 2020 WL 7685372, at *4 (citing *United States v. Sundby*, 186 F.3d 873, 875–76 (8th Cir. 1999)).

Therefore, based on the D.E.A. agent's corroborated tip and the affidavit's description of the positive dog sniff, the affidavit established probable cause for the warrant by laying out facts that established a fair probability that evidence of a crime and contraband would be found in the Golden Valley Ramada Inn, Room 235.

*B. There was a sufficient nexus between the evidence sought and Room 235.*

Next, the Court considers the nexus between the evidence sought in Room 235 and the commission of a crime. Mr. Ramirez asserts that there is no nexus between suspected drug possession and distribution, weapons, or electronic communication devices and Room 235. The government responds that the search warrant affidavit met the nexus requirement with respect to Room 235 and the items sought within it.

"In order to support an application for a search warrant, there must be evidence of a nexus between the contraband and the place to be searched." *United States v. Johnson*, 848 F.3d 872, 878 (8th Cir. 2017) (quoting *United States v. Colbert*, 828 F.3d 718, 726 (8th Cir. 2016) (cleaned up)). In determining whether a nexus exists, courts consider "the nature of the crime and the reasonable, logical likelihood of finding useful evidence." *Id.* (quoting *Colbert*, 828 F.3d at 726).

As already discussed above, the warrant affidavit indicated Mr. Ramirez was staying at the Ramada Inn hotel, and getting drugs delivered to him on March 31, 2023. That day, the affiant went to the hotel, learned from management that Mr. Ramirez was registered in Room 235, saw a person Mr. Ramirez's description collect three just-delivered boxes (consistent with the drug-delivery tip), and watched the person bring those boxes into the interior of the hotel. Beyond this, a trained dog alerted to the scent of drugs on Room 235. These facts established probable cause to believe there were narcotics inside the Room 235. Thus, the Court finds there was a sufficient nexus between Room 235 and evidence of drug possession and distribution. As for weapons and electronic communications devices, Officer Johnson's affidavit described his reasons for believing weapons and electronic communication devices would be found on Mr. Martinez's person or in Room 235, stating, "weapons, guns, firearms, ammunitions and other dangerous weapons . . . are often used to facilitate the control over and/or distribution of controlled substances[,]"and electronics such as cellphones, computers, and hard drives are "commonly used to store information." (Doc. 34 at 2.) Considering the totality of the circumstances here and affording appropriate deference to the issuing judge's determination, this Court determines there was a sufficient nexus between the evidence sought in the warrant application and Room 235.

C. *The warrant satisfied the Fourth Amendment's particularity requirement.*

Finally, Mr. Ramirez argues that the search warrant was overbroad because it sought the seizure of all photographs, video tapes, audio recordings, or any other stored electrical communications, cellular telephones, computers, computer hard drives, and all information

8

storage devices. The government disagrees and asserts that the search warrant satisfied the Fourth Amendment's particularity requirement.

"The [F]ourth [A]mendment requires that a search warrant's description of the evidence to be seized be 'sufficiently definite so as to enable the officer with the warrant to reasonably ascertain and identify the place to be searched and the objects to be seized.'" *United States v. Fredrickson*, 846 F.2d 517, 519 (8th Cir. 1988) (quoting *United States v. Muckenthaler*, 584 F.2d 240, 245 (8th Cir. 1978); *United States v. Johnson*, 541 F.2d 1311, 1313 (8th Cir. 1976)). "The particularity requirement is a standard of practical accuracy rather than a hypertechnical one." *United States v. Fiorito*, 640 F.3d 338, 346 (8th Cir. 2011) (quoting *United States v. Thurman*, 625 F.3d 1053, 1057 (8th Cir. 2010) (cleaned up)). Courts base this determination on factors such as the purpose for the warrant, the nature of the items sought, and the totality of the circumstances. *Id.*

Considering these factors, the Court finds that the search warrant affidavit meets the Fourth Amendment's particularity requirement. While the crux of Mr. Ramirez's challenge assumes that "law enforcement would presumably review [the items sought] in [their] entirety," (Doc. 28 at 6), the government reassures the Court that "[l]aw enforcement are aware of their obligations with respect to electronically stored content and electronic communications, and this warrant merely authorized the *seizure* of such materials[,]" (Doc. 31 at 14–15). To that end, Officer Johnson's affidavit described specific categories of items to be seized and provided explanations why their seizure was necessary. The Court concludes that the warrant described the items to be seized with sufficient particularity to allow the officers executing it to identify the place that could be searched and the items

9

that could be seized. The warrant clearly authorized the search of Martin Ramirez and Room 235 of the Golden Valley Ramada Inn, listing them as the "premises, and person(s)" that could be searched. (Doc. 34 at 7.) It also described the list of items that could be seized, including "photographs, video tapes, audio recordings or any other stored electrical communications; . . . [a]ll cellular telephones; [and]. . . [c]omputers, computer hard drives and all information storage type devices . . ." (*Id*. at 8.) This description is sufficiently particular that officers executing the warrant could reasonably identify the items on Mr. Martinez's person or inside Room 235 that they were authorized to seize. Notwithstanding law enforcement officers' obligation to seek a warrant to search the contents of any seized cell phones, computers, or computer hard drives, the Court finds that the warrant was particular enough to authorize the seizure of those items.

**II.     Even if the search warrant was not supported by probable cause, the good-faith exception to the exclusionary rule would apply.**

While evidence seized under the authority of a defective warrant will generally be excluded, under the *Leon*[1] good-faith exception, "evidence seized pursuant to a search warrant that lacked probable cause is admissible if the executing officer's good-faith reliance on the warrant is objectively reasonable." *United States v. Perry*, 531 F.3d 662, 665 (8th Cir. 2008) (citing *United States v. Proell*, 485 F.3d 427, 430 (8th Cir. 2007)). "The good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the

---

[1] *United States v. Leon*, 468 U.S. 897 (1984).

10

issuing judge's authorization." *Proell*, 485 F.3d at 430 (quoting *United States v. Puckett*, 466 F.3d 626, 630 (8th Cir. 2006) (cleaned up)).

No evidence suggests that the officers' reliance on the search warrant here was not in good faith or unreasonable. Accordingly, the Court concludes that the good-faith exception would apply to the warrant, and the evidence seized because of its execution should not be suppressed even in the event the warrant was unconstitutional.

## RECOMMENDATION

Based on the files, records, and proceedings, and for the reasons stated above, **IT IS RECOMMENDED** that Mr. Ramirez's Motion to Supress Physical Evidence Obtained Pursuant to a Defective Warrant (Doc. 28) be **DENIED**.


DATED:  November 28, 2023      *s/Douglas L. Micko*
                                                                                DOUGLAS L. MICKO
                                                                                United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "[a] party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served with a copy" of the Report and Recommendation.

A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).